UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSUE CRUZ, | : |
|     Plaintiff, | : |
| | : |
| v. | :    3:21cv8 (MPS) |
| | : |
| DR. NAQVI, et al., | : |
|     Defendants. | : |

## INITIAL REVIEW ORDER

On January 4, 2021, the *pro se* plaintiff, Josue Cruz, an unsentenced inmate[1] in the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983 for violation of his constitutional rights due to the medical indifference of DOC staff members at MacDougall-Walker Correctional Institution ("MacDougall"): Dr. Naqvi, RN Shanya, RN Supervisor Furtick, RCOO Shea, Captain Fleming, Captain Dow, and Warden Barrone (Barone).[2] ECF No. 1. The Court construes Cruz's complaint as alleging Fourteenth Amendment violations against defendants in their individual capacities for damages.[3]

For the following reasons, the Court will permit Cruz's Fourteenth Amendment medical indifference claims to proceed against Dr. Naqvi, RN Shanya, RN Supervisor Furtick, RCOO Shea, Captain Fleming, and Warden Barone in their individual capacities for damages.

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). At this writing, the DOC website shows that Cruz is an unsentenced inmate in the Walker building at MacDougall.
http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=279366.

[2] The court notes that the name of the MacDougall Warden is Kristine Barone. The clerk is instructed to correct the docket to reflect the correct spelling of Warden Barone's name. *See* https://portal.ct.gov/DOC/Facility/MacDougall-Walker-CI.

[3] Cruz has not provided a specific request for relief.

## I. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* In undertaking this review, the Court is obligated to "construe" complaints "liberally and interpret[ ] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that includes only " 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

## II. ALLEGATIONS

In October and November 2019, Cruz had sinus, congestion, and sleep apnea problems. ECF No. 1 at ¶ 1. He was unable to breath during the day or night, was snoring loudly, and would wake up gasping for air. *Id.* He was also having problems with drooling, was swallowing

his tongue, and having a dry nose, mouth and throat. *Id.* He saw a doctor at some unspecified time. *Id.*

Cruz requested Correction Officer Doe to call a nurse because he could not breathe, but Correction Officer Doe told him that Nurse Shanya would not see him as it was not an emergency. *Id.* at ¶ 2. Officer Doe told Cruz to write to sick call. *Id.*

At times, his conditions worsened to the point that he could not breathe, taste or even smell. *Id.* at ¶ 3.

Cruz spoke to Captain Dorzco about seeing the nurses and the doctor so that he could receive a nasal spray and antibiotic to clear his infection. Captain Dorozco responded that she would inform Nurse Shanya, but that Cruz could not see a nurse or a doctor. *Id.* at ¶ 5. She told him to write to sick all. *Id.*

Cruz wrote to sick call the next day while he was congested, and he had lost his sense of taste and smell, and had difficulty breathing due to his sleep apnea. *Id.* at ¶ 6.

Cruz has had to deal with his sinus infection with no medication for months while his condition has worsened during a whole year. *Id.* at ¶ 7. He did not receive an asthma pump, nebulizer, or breathing machine for his sleep apnea for a year. *Id.*

He wrote to Captain Dorzco many times about these issues, but nothing was ever resolved. *Id.* at ¶ 8. He also wrote to Nurse Supervisor Furtick, RCOO Shea, Captain Fleming, Warden Barone, and Dr. Naqvi, but his issues were not resolved. *Id.* Some of these individuals never answered Cruz. *Id.*

Dr. Naqvi has not prescribed anything for Cruz's sinus infection, asthma, or sleep apnea during the past year. *Id.* at ¶ 9.

On September 22, 2020, Cruz's chest hurt, and he could not breathe. *Id.* at ¶ 10. He requested Correction Officer Doe 1 and Doe 2 to call the medical unit. *Id.* Nurse Shanya refused to see him because she was busy doing paperwork. *Id.* Cruz practiced deep breathing and took Motrin to help with his pain. *Id.* at ¶ 10.

### III.  DISCUSSION

The standard of reviewing Cruz's claim of deliberate indifference to his health and safety turns on whether he is a convicted prisoner or pretrial detainee. Claims of convicted prisoners are analyzed under the Eighth Amendment; while claims of pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29-34 n.9 (2d Cir. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017); *see also Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979) ("A sentenced inmate … may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment."). Because Cruz was a pretrial detainee at the time relevant to this complaint, his claims will be analyzed under the Due Process Clause of the Fourteenth Amendment.

Under the Fourteenth Amendment analysis, the "serious medical need standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty*, 925 F.3d 73, 86 (2d Cir. 2019). To determine whether a medical need is sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care, the court should "consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects the individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles*, 925 F.3d at 86. "In most cases, the actual medical

4

consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." *Id.* at 86.

The pretrial detainee must also "prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). Thus, to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a constitutional violation "must be established against the supervisory official directly.").

Although Cruz's allegations may be insufficient to determine whether his conditions were sufficiently serious to satisfy the objective element, the court considers Cruz to have plausibly alleged that he suffered from objectively serious medical conditions due to his ongoing sinus infection that made it difficult for him to breathe; need for an inhaler and medication; and

5

sleep apnea. *See Holness v. Gagne*, 2019 WL 1789907, at *6 (D. Conn. Apr. 24, 2019) (breathing problems also constitute a serious medical need); *Perez v. Semple*, No. 3:18-CV-1697 (JCH), 2018 WL 6435651, at *2 (D. Conn. Dec. 7, 2018) (finding that sleep apnea is a sufficiently serious medical condition to satisfy the objective prong.).

With regard to the defendants' state of mind, Cruz has alleged that he wrote to Dr. Naqvi, RN Shanya, Captain Fleming, Warden Barone, and RCOO Shea many times about his need for medical attention due to his congestion, which caused him difficulty breathing, and his sleep apnea, but they ignored his requests or failed to provide the necessary medical care. ECF No. 1 at ¶¶ 8-10. For initial pleading purposes, Cruz has sufficiently alleged that these defendants acted with indifference to his serious medical needs. However, Cruz has not alleged any facts indicating the personal involvement of Captain Dow (who is named in the case caption) in the alleged Fourteenth Amendment claim. Accordingly, Cruz's Fourteenth Amendment medical indifference claim may proceed against all defendants with the exception of Captain Dow.

## IV.  ORDERS

The Court enters the following orders:

(1) The case shall proceed on Cruz's Fourteenth Amendment medical indifference claims against Dr. Naqvi, RN Shanya, RN Supervisor Furtick, RCOO Shea, Captain Fleming, and Warden Barone in their individual capacities for damages.   Any claims against Captain Dow, whose name appears in the case caption, are DISMISSED without prejudice because Cruz has not alleged Dow's personal involvement in the alleged Fourteenth Amendment medical indifference or any other constitutional violation. Within **thirty (30) days** from the date of this

order, Cruz may file an amended complaint to correct the deficiency identified in this ruling with respect to Captain Dow.

(2) The clerk shall verify the current work address of Dr. Naqvi, RN Shanya, RN Supervisor Furtick, RCOO Shea, Captain Fleming, and Warden Barone with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendants choose to file an answer, Defendants shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be

7

found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(11) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendant's counsel by regular mail.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 19th day of April 2021, at Hartford, Connecticut.