### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-----------------------------X
                             :
JOSUE CRUZ                   :    Civil No. 3:21CV00008(SALM)
                             :
v.                           :
                             :
DR. NAQVI, R.N. SHANYA,      :
CAPTAIN FLEMING, WARDEN      :
BARRONE, RCOO SHEA, and RN   :
SUPERVISOR FURTICK           :    September 13, 2022
                             :
-----------------------------X
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #37]

Self-represented plaintiff Josue Cruz ("Cruz" or "plaintiff"), a pretrial detainee currently held at MacDougall-Walker Correctional Institution,[1] brings this action relating to events occurring during his detention in the custody of the Connecticut Department of Correction ("DOC"). After initial review, six defendants remain: Dr. Naqvi, Nurse Graham,[2] Supervising Nurse Furtick, RCOO Shea, Captain Fleming, and

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Cruz is an unsentenced pretrial detainee. See http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=279366 (last visited Sept. 12, 2022).

[2] Plaintiff refers to Nurse Graham as "R.N. Shanya" but her full name is Shanya Graham. See Doc. #37-1 at 1 n.1.

1

Warden Barone[3] (collectively the "defendants"). All defendants move for summary judgment on the grounds that "plaintiff failed to exhaust his administrative remedies, and his claims are therefore barred by the Prison Litigation Reform Act[,]" and that "plaintiff fails to present sufficient evidence to support a claim that any defendant was deliberately indifferent to his medical needs." Doc. #37-1 at 1. For the reasons set forth below, defendants' Motion for Summary Judgment [**Doc. #37**] is **GRANTED**.

## I.   PROCEDURAL BACKGROUND

Plaintiff brought this action on January 4, 2021. See Doc. #1. On that same date, plaintiff filed a motion for leave to proceed in forma pauperis, see Doc. #2, which was granted. See Doc. #9. On April 19, 2021, Judge Michael P. Shea, the then-presiding Judge, conducted an initial review of the Complaint. See Doc. #12. Judge Shea permitted plaintiff's Fourteenth Amendment deliberate indifference to serious medical needs claim to proceed against defendants Naqvi, Furtick, Graham, Shea, Fleming, and Barone, based on plaintiff's allegations of a

---

[3] Plaintiff names as a defendant "Warden Barrone." Doc. #1 at 1; see also id. at 3. Defendants represent that the correct spelling of that defendant's name is "Barone." See Doc. #37-1 at 1 n.3. The Court hereinafter refers to this defendant by the correct spelling of her name, "Warden Barone."

"sinus infection that made it difficult for him to breathe; need for an inhaler and medication; and sleep apnea." Id. at 5-6.

On April 21, 2021, plaintiff filed an Amended Complaint. See Doc. #14. On July 15, 2021, Judge Shea entered an Order in response to the Amended Complaint, which states, in relevant part:

> Under Federal Rule of Civil Procedure 8, a complaint must be a plain and concise statement of facts constituting a claim recognized by law; Rule 8 requires that a statement for relief be plain "because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). Cruz may not file exhibits in lieu of alleging facts to assert his legal claims against the defendants. As Cruz's amended complaint does not provide notice to the court or to the defendants of any plausible legal claims in compliance with Rule 8, the court will consider it to be an addendum to his original complaint with supplemental exhibits. Cruz's case will still proceed on the Fourteenth Amendment claims consistent with the court's initial review order (ECF No. 12) of the original complaint, which remains the operative complaint in this matter.

Doc. #22 (sic).

On June 21, 2021, defendants filed an Answer to the Complaint. See Doc. #21.

On October 15, 2021, this matter was transferred to the undersigned "for all further proceedings." Doc. #26.

On March 11, 2022, defendants filed the instant Motion for Summary Judgment. See Doc. #37. Plaintiff filed a letter seeking an extension of time to respond, see Doc. #41, which the Court

3

granted, see Doc. #42. Plaintiff also filed a letter to the
Court discussing various medical concerns. See Doc. #45. He did
not file any response to the summary judgment motion in this
case. However, the Court entered the following Order on May 9,
2022:

> Plaintiff Josue Cruz is proceeding as a self-represented
> party in multiple cases before this Court. He filed a
> response to defendants' Motion for Summary Judgment in
> Cruz v. Naqvi, et al., 3:21CV00049(SALM), on May 5, 2022.
> See 3:21CV00049, Doc. #36. Mr. Cruz was also required to
> file a response to the Motion for Summary Judgment
> pending in this matter by no later than May 2, 2022. See
> Doc. #42.
>
> The Court has reviewed the response filed in
> 3:21CV00049(SALM), and, construing it generously in
> light of plaintiff's self-represented status, finds that
> it addresses certain issues that are raised in this
> action. The Court therefore construes that response as
> also having been intended to respond to the Motion for
> Summary Judgment pending in this action.
>
> Accordingly, the Clerk of Court shall docket plaintiff's
> response to defendants' Motion for Summary Judgment
> filed in 3:21CV00049 at Doc. #36 in this action as well,
> as a response to defendants' Motion for Summary Judgment
> (Doc. #37).

Doc. #43. That document was filed in this case as ordered by the
Court. See Doc. #44. Having received no other response from
plaintiff to defendants' motion, the Court construes that filing
as the response.

## II.  **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the movant shows that
there is no genuine dispute as to any material fact and the

4

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002). The moving party may discharge this burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

"[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to formal pleadings drafted by lawyers. ... This liberal standard, however, does not excuse a pro se litigant from following the procedural formalities of summary judgment." Govan v. Campbell, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (citations and quotation marks omitted). A plaintiff's "pro se status d[oes] not eliminate his obligation to support his claims with some evidence to survive summary judgment." Nguedi v. Fed. Rsrv. Bank of N.Y., 813 F. App'x 616, 618 (2d Cir. 2020), cert. denied, 141 S. Ct. 825 (2020). "[A] pro se party's bald assertion, completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." Hamilton v. Gen. Motors Hourly-Rate Employee's Pension Plan, 101 F. Supp. 3d 202, 209 (N.D.N.Y. 2015) (citation and quotation marks omitted).

Pursuant to the District of Connecticut Local Rules:

> A party opposing a motion for summary judgment shall file and serve with the opposition papers a document entitled "Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment," which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c).

D. Conn. L. Civ. R. 56(a)(2)(i) (emphasis added). When a party fails to controvert a fact set forth in the opposing party's

Local Rule 56(a)(1) statement, it will be deemed admitted if it is "supported by the evidence[.]" D. Conn. L. Civ. R. 56(a)(1).

### III. <u>FACTUAL BACKGROUND</u>

As noted, defendants provided the Local Rule 56(b) Notice to Self-Represented Litigant Regarding Summary Judgment, a copy of Local Rule 56, and a copy of Federal Rule 56, to plaintiff in conjunction with their motion for summary judgment. <u>See</u> Doc. #37-3. Despite this Notice, which explicitly informed plaintiff that he was required to "respond to specific facts the movant claims are undisputed (see Local Rule 56(a)(2))" and to "support [his] claims with specific references to evidence[,]" <u>id.</u> at 2, plaintiff did not file a Rule 56(a)(2) Statement.

> The court is well aware ... that the submissions of a <u>pro se</u> litigant must be construed liberally and interpreted to raise the strongest arguments that they <u>suggest</u>. This policy of liberally construing <u>pro se</u> submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect <u>pro se</u> litigants from inadvertent forfeiture of important rights because of their lack of legal training. On the other hand, <u>pro se</u> parties are not excused from abiding by the Federal Rules of Civil Procedure.

<u>Wilks v. Elizabeth Arden, Inc.</u>, 507 F. Supp. 2d 179, 185 (D. Conn. 2007) (citations and quotation marks omitted).

Plaintiff was provided ample notice of the requirement to file a Local Rule 56(a)(2) statement with his response to defendants' motion for summary judgment. <u>See</u> <u>Cusamano v. Sobek</u>,

604 F. Supp. 2d 416, 426 (N.D.N.Y. 2009) ("[T]he Court extends special solicitude to the pro se litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment." (emphasis added)); Wu v. Nat'l Geospatial Intel. Agency, No. 3:14CV01603(DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting that the self-represented plaintiff "was advised on two separate occasions of the need to comply with Local Rule 56 and specifically of the need to file a Local Rule 56(a)2 Statement" but had failed to do so, and therefore deeming the statements in the movant's Statement of Undisputed Facts admitted).

"[T]o the extent that [defendants'] factual assertions are properly supported by the evidence the Court will deem those assertions admitted." Wu, 2017 WL 923906, at *2; see also Otero v. Purdy, No. 3:19CV01688(VLB), 2021 WL 4263363, at *10 (D. Conn. Sept. 20, 2021) ("deem[ing] Defendants' 56(a)1 statements to be admitted as they are properly supported by the evidence[]" and the self-represented plaintiff did not file a Local Rule 56(a)(2) statement). However, to the extent that a material fact is refuted by plaintiff's responses to defendants' motion for summary judgment, the Court will consider that fact disputed. See Wilks, 507 F. Supp. 2d at 185–86 ("For the purposes of this motion, however, the court shall deem admitted all facts set forth in the Defendant's compliant Local Rule 56(a)(1) Statement

that are supported by the evidence and not refuted by the
Plaintiff's opposition memorandum." (footnote omitted)).
Accordingly, the Court will deem all facts in defendants' Local
Rule 56(a)(1) statement that are supported by the evidence
admitted, unless plaintiff's submissions directly contradict
them. If a material fact is disputed, the Court will consider
the evidence provided by the parties to determine whether the
dispute is genuine.

### A.    Allegations of the Complaint

The Complaint makes the following factual allegations
relevant to the claims that have been permitted to proceed after
initial review. In October and November 2019, plaintiff "was
having sinus & congestic problems also sleep apnea couldn't
breath during the day or even sleep at night snoring loud,
gasping out for air, swallowing my toung, druling, dry nose,
mouth, troath." Doc. #1 at 5 (sic). Nurse Graham said she could
not see him because "it wasn't an emergency[.]" Id. Plaintiff
made requests to be seen by medical, and wrote to "sick call"
for help. Id. at 5-6. He received no medication for a sinus
infection for months, or up to a year. See id. at 6. He received
no "asthma pump" and no "breathing machine" for his sleep apnea
for a full year. Id.

Plaintiff wrote to defendants Furtick, Shea, Fleming,
Barone, and Naqvi about these issues. See id. On September 22,

2020, plaintiff's "chest hurt" and he "couldn't breathe[,]" but Nurse Graham again refused to see him because "she was busy doing paperwork." Id.

**B.   DOC Administrative Remedy Procedure**

Two different administrative remedy procedures available to DOC inmates are potentially at issue in this matter. Defendants Dr. Naqvi, Nurse Graham, Supervising Nurse Furtick, and RCOO Shea are medical personnel. The claims against them for deliberate indifference to serious medical needs require exhaustion pursuant to A.D. 8.9. Defendants Captain Fleming and Warden Barone are non-medical personnel; therefore, the claims against them require exhaustion pursuant to A.D. 9.6. The Court reviews both provisions below.

1.   Administrative Directive 9.6

Inmates incarcerated at Connecticut DOC facilities have access to the Inmate Administrative Remedies Process outlined in Administrative Directive 9.6 ("A.D. 9.6"). See generally Doc. #37-13 at 22-35.[4]

_____

[4] A.D. 9.6 was revised on April 30, 2021. See State of Connecticut Department of Correction, Administrative Directive 9.6: Inmate Administrative Remedies, 3-4 (April 30, 2021), https://portal.ct.gov/-/media/DOC/Pdf/Ad/AD9/AD_0906_Effective_04302021.pdf. Plaintiff's Complaint concerns events allegedly occurring from 2019 to 2020. See Doc. #1 at 5-6. Accordingly, all references to A.D. 9.6 in this Ruling refer to the version that was in effect from August 15, 2013, through April 29, 2021, which defendants

A.D. 9.6 provides "a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority." Id. at 22. Plaintiff does not dispute that A.D. 9.6 was in effect at the time of the incidents underlying his Complaint, nor that he was required to exhaust his administrative remedies pursuant to A.D. 9.6.

> The type of remedies available to an inmate depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel. For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in subsections (B) through (I) of Administrative Directive 9.6(4), the applicable remedy is the Inmate Grievance Procedure set forth in 9.6(6).

Gulley v. Bujnicki, No. 3:19CV00903(SRU), 2019 WL 2603536, at *3 (D. Conn. June 25, 2019). Because plaintiff's claims do not relate to any of the specifically identified matters in subsections (B) through (I) of A.D. 9.6(4), his claims are subject to the Inmate Grievance Procedure set forth in Subsection 6 of A.D. 9.6. See Doc. #37-13 at 26-30. The Inmate Grievance Procedure entails a number of steps.

"An inmate must attempt to seek informal resolution prior to filing an inmate grievance." Id. at 26. An inmate may attempt informal resolution "verbally with the appropriate staff member

---

have attached as Attachment 4 to Exhibit J. See Doc. #37-13 at 21-35.

or with a supervisor/manager. If the verbal option does not resolve the issue, the inmate shall submit a written request via CN 9601, Inmate Request Form." Id.

"An inmate may file a grievance if the inmate is not satisfied with the informal resolution offered." Id. at 27. "The grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance." Id. This grievance must be submitted on a "CN 9602, Inmate Administrative Remedy Form[,]" and the inmate must "attach CN 9601, Inmate Request Form, containing the appropriate staff member's response[.]" Id. "If the inmate was unable to obtain a blank CN 9601, Inmate Request Form, or did not receive a timely response to the inmate request, or for a similar valid reason, the inmate shall include an explanation indicating why CN 9601, Inmate Request Form, is not attached." Id. The inmate must submit the CN 9602 by depositing it "in the Administrative Remedies box." Id. This is commonly known as a "Level 1" grievance. Id. at 28.

A.D. 9.6 provides that each Level 1 grievance "shall be reviewed for compliance with the Inmate Grievance Procedure and investigated if the grievance is accepted." Id. DOC staff must respond "in writing within 30 business days of receipt[.]" Id. An inmate's grievance may be "Rejected, Denied, Compromised, Upheld or Withdrawn." Id. at 27.

12

"An inmate may appeal a Level 1 disposition to Level 2 within five (5) calendar days of receipt of the decision[,]" or "[i]f a response to a Level 1 grievance is not received within 30 business days[.]" Id. at 28. "A grievance appeal filed by an inmate confined in a Connecticut correctional facility shall be decided by the appropriate District Administrator." Id. Level 2 is "the final level of appeal for all grievances except as provided in Section 6(L)" of A.D. 9.6. Id.[5]

The DOC maintains "[a] grievance file ... at each level for each grievance[,]" which "include[s] a copy of the grievance, each response, and any supporting documents submitted in support of the grievance, presented during investigation, or relied upon in the decision." Id. at 29. Additionally, the DOC maintains a "Grievance Log," form CN 9608, which "include[s] the name and number of the grievant, the dates of initial receipt and of the response at that level, a brief description of the problem and the disposition." Id. at 30.

---

[5] In limited circumstances, an inmate may appeal a Level 2 disposition to Level 3. See Doc. #37-13 at 28. Level 3 review is available only if the grievance: "1. challenges Department level policy; 2. challenges the integrity of the grievance procedure; or, 3. Exceeds the established 30 business day time limit for a Level 2 grievance response." Id. (sic). None of these circumstances are applicable to plaintiff's grievance.

2.   Administrative Directive 8.9

Inmates incarcerated at Connecticut DOC facilities also have access to the Health Services Review ("HSR") Policy outlined in Administrative Directive 8.9 ("A.D. 8.9"). See Doc. #37-11 at 6-10.[6]

A.D. 8.9 establishes an "administrative remedy for all health services to enable an inmate to seek formal review of any health care provision, practice, diagnosis or treatment." Doc. #37-11 at 6. Plaintiff does not dispute that A.D. 8.9 was in effect at the time of the incidents underlying his Complaint, nor that he was required to exhaust his administrative remedies pursuant to A.D. 8.9.

There are two types of Health Services Review:

A.  Diagnosis and Treatment. A review of diagnosis or treatment including a decision to provide no treatment, relating to an individual inmate.
B.  Review of an Administrative Issue. A review of a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider[.]

---

[6] A.D. 8.9 was revised on April 30, 2021. See State of Connecticut Department of Correction, Administrative Directive 8.9: Administrative Remedy for Health Services, 6-9 (April 30, 2021), https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0809pdf.pdf. Plaintiff's Complaint concerns events allegedly occurring from 2019 to 2020. See Doc. #1 at 5-6. Accordingly, all references to A.D. 8.9 in this Ruling refer to the version that was in effect from July 24, 2012, through April 29, 2021, which defendants have docketed as Attachment 1 to Exhibit H. See Doc. #37-11 at 6-10.

Id. at 8. Plaintiff here complains that the defendants failed to provide adequate treatment for his sinus and breathing conditions; his claims therefore fall under "Diagnosis and Treatment." Id.

An "inmate must attempt to seek an informal resolution prior to filing for a Health Services Review." Doc. #37-11 at 8. An inmate must attempt informal resolution "face to face with the appropriate staff member or with a supervisor via written request utilizing CN 9601 Inmate Request Form." Id. Prison staff are required to respond to informal resolution requests "within 15 calendar days from receipt of the written request." Id.

If "informal resolution via inmate request was unsuccessful[,]" an inmate seeking review of a diagnosis or treatment "may apply for a Health Services Review" by submitting a "CN 9602 Inmate Administrative Remedy form[.]" Id. On that form, the "inmate shall check the 'Diagnosis/Treatment' box and explain concisely the cause of his/her dissatisfaction, and deposit the completed form in the Health Services Remedies/Review box." Id.

The HSR Coordinator maintains "[a] log of each Health Services Review request and appeal[.]" Id. at 9. The HSR Coordinator also maintains "[a] file of each Health Services Review request and appeal ..., containing copies of the forms that have been used in the review or appeal." Id. For any inmate

that "has applied for a Review of a Diagnosis or Treatment[,]"
the "health record" of that inmate must "contain a copy of the
forms used in the Review, notations in the clinical record
including a notation of 'HSR Administrative Remedy'
appointment." Id.

### C.   Plaintiff's Administrative Remedy History

Defendants assert the following as undisputed material
facts. See Doc. #37-2. The facts set forth herein are not
contested by plaintiff in his submissions, and are supported by
the evidence of record. These facts are therefore deemed
admitted.[7]

"From October 2019 through March 2020, the plaintiff
submitted numerous inmate requests for medical attention
regarding multiple different complaints. The plaintiff did not
submit any request related to sleep apnea until a request dated
March 12, 2020, when he asked to be placed on a list for a sleep
study. ... The plaintiff did not complain regarding any nasal
congestion issue." Id. at 6, ¶40. "In May 2020, the plaintiff
complained again regarding his sinus allergies." Id. at 9, ¶57.

"In mid-September [2020], Warden Barone's office received
an inmate request form (CN9601) filed by the plaintiff and
addressed to her. ... In the request, the plaintiff stated that

_____

[7] All citations to the record in the below statements are
omitted.

16

he was having difficulty breathing at night and was not able

[to] get treatment from his medical providers." Id. at 11, ¶69.

"Warden Barone responded to the request on September 18, 2020,

and noted that he should have a scheduled follow-up appointment

with his provider, Dr. Naqvi and that he should speak with Dr.

Naqvi freely." Id. at 11, ¶70. "In early October 2020, Warden

Barone's office received another inmate request form (CN9601)

filed by the plaintiff and addressed to her." Id. at 11, ¶72.

"In this request, the plaintiff mentioned concerns with seeing

providers and obtaining treatment for a sinus infection and

sleep apnea." Id. at 11, ¶73. "Warden Barone responded to the

plaintiff's request on October 8, 2020. She asked him what the

nurse supervisor had said to him when he wrote to her, and noted

his medical provider would determine if antibiotics were

necessary to treat his sinus infection." Id. at 11, ¶74.

"On October 14, 2020, HMA Shea's office received an inmate

request form (CN9601) filed by the plaintiff and addressed to

her." Doc. #37-2 at 12, ¶77. "In this request, the plaintiff

stated that he had had a sinus infection go untreated for a

year, but that he had received a nasal spray that helped his

condition. He stated that he wanted an antibiotic. He also

stated that he had complained about sleep apnea that had not

been treated for a year that was getting worse. He claimed to

not have seen Dr. Naqvi for five months." Id. at 12, ¶78.

17

"HMA Shea responded on October 29, 2020. She noted that she reviewed his medical file and he was currently awaiting a pulmonary consult for sleep apnea, and had just seen Dr. Naqvi on September 30, 2020. She also noted that he had been seen by nursing on October 4, 2020, seen by an APRN on October 8, 2020, and again by nursing on October 21, 2020." Id. at 12, ¶79.

"The plaintiff filed no health services administrative remedy pursuant to Administrative Directive 8.9 between 2014 and February 2021." Doc. #37-2 at 15, ¶101. "The plaintiff filed no health services administrative remedy pursuant to Administrative Directive 8.9 related to any sleep apnea, sinus, or breath issue prior to January 4, 2021." Id. at 15, ¶102.[8]

"All AD 9.6 grievances filed by MWCI inmates are logged into a facility grievance log. Most grievances are then investigated and responded to at the facility. Some level 1 grievances, like appeals of a SRG designation, are logged into the grievance log, but then forwarded to the District Administrator's Office for review and response. Any appeals of a level 1 grievance response would also be logged into the facility grievance log." Id. at 15, ¶105.

"Since October 18, 2019, the plaintiff filed three level 1 grievance[s] and two associated level 2 grievance appeals

---

[8] The Complaint was filed on January 4, 2021. See Doc. #1.

pursuant to AD 9.6, at MWCI. These grievances and appeals related to an alleged hand injury that occurred in November 2019 and a fall that occurred [in] March 2020." <u>Id.</u> at 15, ¶106. "There is no record of any other grievances or appeals filed by the plaintiff pursuant to Administrative Directive 9.6 while at MWCI through May 2021." <u>Id.</u> at 15, ¶107.

## IV.   <u>DISCUSSION</u>

### A.   **Applicable Law**

The Prisoner Litigation Reform Act ("PLRA") provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes[.]" <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

"The Supreme Court has held that 'the PLRA exhaustion requirement requires proper exhaustion.' That is, 'prisoners must complete the administrative review process in accordance with the applicable procedural rules -- rules that are defined not by the PLRA, but by the prison grievance process itself.'" <u>Johnson v. Killian</u>, 680 F.3d 234, 238 (2d Cir. 2012) (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006); and then quoting <u>Jones</u>

v. Bock, 549 U.S. 199, 218 (2007)). "The PLRA's exhaustion
requirement is designed to afford corrections officials time and
opportunity to address complaints internally before allowing the
initiation of a federal case." Johnson v. Testman, 380 F.3d 691,
697 (2d Cir. 2004) (citation and quotation marks omitted).
"Proper exhaustion demands compliance with an agency's deadlines
and other critical procedural rules because no adjudicative
system can function effectively without imposing some orderly
structure on the course of its proceedings." Woodford, 548 U.S.
at 90-91 (footnote omitted); see also Williams v. Comstock, 425
F.3d 175, 177 (2d Cir. 2005) ("[T]he failure to timely file the
grievance in accordance with IGP rules amounted to a failure to
exhaust administrative remedies in this case.").

    As to plaintiff's claims against medical staff, alleging
failure to provide care, he was required to exhaust the
administrative remedies made available to him under A.D. 8.9; as
to plaintiff's claims against defendants Fleming and Barone, he
was required to exhaust the administrative remedies available to
him under A.D. 9.6. See Carter v. Revine, No. 3:14CV01553(VLB),
2017 WL 2111594, at *14 (D. Conn. May 15, 2017) ("Directive 8.9
applies to [plaintiff's] claims against medical staff. Directive
8.9 provides formal review of any health care provision,
practice, diagnosis or treatment, whereas Directive 9.6 more
generally applies to any aspect of an inmate's confinement that

is subject to the Commissioner's authority[.]" (citations and quotation marks omitted)); Urbanski v. Dep't of Corr., No. 3:18CV01323(VLB), 2019 WL 6683047, at *2-3 (D. Conn. Dec. 5, 2019) (distinguishing between A.D. 8.9 and A.D. 9.6).

   **B.   Analysis**

   The record demonstrates that plaintiff submitted numerous informal requests relating to his medical condition during the relevant period. See generally Doc. #37, Doc. #38. However, informal resolution is not sufficient to exhaust administrative remedies. An inmate "cannot satisfy the PLRA's exhaustion requirement ... by making informal complaints[.]" Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007). The PLRA "requires proper exhaustion -- that is, using all steps that the agency holds out, and doing so properly." Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011) (citation and quotation marks omitted). Here, "proper exhaustion" means that plaintiff was required to do more than submit CN 9601 Inmate Request Forms and write letters. If he had a concern with his medical treatment (or lack thereof), either against medical staff or non-medical facility staff, plaintiff was required to avail himself of the process provided by A.D. 8.9 and/or A.D. 9.6. The undisputed evidence of record reflects that he did not do that.

   There is no dispute of the material facts related to the exhaustion defense. Defendants have provided evidence showing

that plaintiff failed to exhaust his administrative remedies. Plaintiff has neither contested that evidence nor even argued that he did exhaust his remedies, or that such remedies were unavailable to him. Summary judgment is therefore appropriate.[9]

## V.   CONCLUSION

The record establishes that plaintiff "failed to properly exhaust the administrative remedies available to him before filing suit in federal court[]" as to all of his remaining claims. Wilson v. McKenna, 661 F. App'x 750, 753 (2d Cir. 2016). The PLRA requires exhaustion. Failure to exhaust available administrative remedies entitles defendants to summary judgment. See McKinney v. Prack, 170 F. Supp. 3d 510, 518 (W.D.N.Y. 2016) (granting summary judgment in favor of defendants on plaintiff's 42 U.S.C. §1983 claims where plaintiff failed to exhaust his administrative remedies under the PLRA).

Accordingly, and for the reasons set forth herein, defendants' Motion for Summary Judgment [**Doc. #37**] is **GRANTED, as to all defendants, and as to all claims.**

Judgment shall enter in favor of defendants.

The Clerk shall close this case.

---

[9] The Court need not reach defendants' remaining arguments in support of summary judgment because the exhaustion issue is dispositive of all claims.

It is so ordered this 13th day of September, 2022, at Bridgeport, Connecticut.

_____
            /s/
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE